IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONY JACKIE HERNANDEZ,

    Petitioner,                        No. CIV S-06-1106 RRB GGH P

    vs.

JAMES YATES, et al.,

    Respondents.                   FINDINGS AND RECOMMENDATIONS

_____/

Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2004 conviction for possession of a controlled substance and possession of ammunition by a person prohibited from owning or possessing a firearm. Pursuant to the Three Strikes law, petitioner was sentenced to two concurrent terms of 25 years to life imprisonment.

Pending before the court is petitioner's February 28, 2007, application to stay proceedings pending exhaustion of a new claim. On March 7, 2007, respondent filed an opposition to this request. After carefully reviewing the record, the court recommends that this request be denied.

Petitioner moves to stay this action pending exhaustion of one new claim. In Rhines v. Weber, 544 U.S. 269, 125 S. Ct. 1528 (2005), the Supreme Court held that a habeas

1

petition may only be stayed for further exhaustion if the petitioner can show "good cause" for his failure to first exhaust his claims in state court and that his claims are not "plainly meritless." Rhines, 544 U.S. at 278, 125 S. Ct. at 1535. What constitutes good cause has not been precisely defined except to indicate at the outer end that petitioner must not have engaged in purposeful dilatory tactics, id., and that "extraordinary circumstances" need not be found. Jackson v. Roe, 425 F.3d 654, 661 (9th Cir. 2005). See Rhines, 544 U.S. at 279, 125 S. Ct. at 1536 (Stevens, J., concurring) (the "good cause" requirement should not be read "to impose the sort of strict and inflexible requirement that would trap the unwary pro se prisoner." (internal citation omitted)); see also id. (Souter, J., concurring) (pro se habeas petitions do not come well trained to address tricky exhaustion determinations).

      The undersigned has struggled to set forth standards for the showing of good cause discussed in Rhines. At one point, the undersigned believed that "a prima facie case that a justifiable, legitimate reason exists which warrants the delay of federal proceedings while exhaustion occurs, would suffice." Bryant v. Carey, 2006 WL 241479, *2 (E.D. Cal. 2006). However, this definition does little but say "good cause" in other words. Upon reflection, the undersigned believes that the criteria utilized in Pioneer Inv. Services v. Brunswick Associates, 507 U.S. 394, 113 S. Ct. 1489 (1993), in defining "excusable neglect" works well with the good cause referenced in Rhines. That is, the court will look to factors such as prejudice to the non-moving party, length of the delay and its effect on efficient court administration, whether the delay was caused by factors beyond the control of the movant, and good faith. Id. at 386, 396, 113 S. Ct. at 1493, 1498. The fact that counsel was even negligent does not per se disqualify counsel from a finding of excusable neglect. Id. at 394-395, 113 S. Ct. at 1498. However, whether it is inappropriate to penalize a client for the actions of his lawyer is not a factor to be considered. Id. at 396, 113 S. Ct. at 1499.

      In order to put petitioner's motion in context, the following background is required. On May 22, 2006, petitioner filed the original pro se petition. On July 26, 2006, the

court appointed counsel to represent petitioner.  On February 27, 2007, petitioner filed an amended petition raising one exhausted claim: counsel was ineffective for failing to present the appropriate vehicular code statute when arguing the motion to suppress.

In the pending motion, filed January 24, 2006, petitioner seeks leave to exhaust a claim that trial counsel was ineffective for failing to investigate evidence that could have been presented at his motion to suppress hearing.  In particular, petitioner contends that the evidence against him was based upon a search emanating from a traffic stop initiated by two SWAT officers, allegedly for petitioner's pick-up truck having a defective stoplamp.  Petitioner contends that at the motion to suppress, not only did he deny having any problems with his stoplamp, but two separate individuals viewed the pick-up truck after his arrest and failed to see any defects.  The truck was subsequently sold to Ruben Galvez who informed petitioner's present counsel that there were never any repairs to the tail lights and nor have there been any problems with them.

Petitioner now seeks to exhaust a claim of ineffective assistance of counsel contending that counsel should have tested the tail lights of the pick-up truck prior to the motion to suppress.  Petitioner contends that despite the intervening time period, an inspection of the pick-up truck might reveal whether the disputed taillight has ever been replaced.

In a declaration submitted in support of the pending request, petitioner's trial counsel discusses his own attempts to investigate this claim:

> 3. There were several difficulties with pursuing this possibility.  First, I had to ascertain the mechanical features of his original truck, a 1994 Ford XL150, including the original taillights model number.  Then, I had to find a potential expert in the Sacramento area who was sufficiently knowledgeable about such matters and inquire, for free, whether an investigation might determine if the tail lamps had ever been replaced.  I was finally able to locate such an expert and obtain an agreement that he would inspect the left stoplamp if the vehicle could be brought to him.
>
> 4. The primary problem has been contacting the individual who bought the pick-up truck from petitioner, a Ruben Galvez.  After weeks of leaving phone messages, Mr. Galvez finally returned my call on February 20, 2007, and confirmed that he had never changed the stoplamp nor had he ever had any problem with them since buying the truck from petitioner back in 2002.  Mr. Galvez did not refuse to have the truck examined, but seemed reluctant to do so

3

      since he lived approximately an hour from the Sacramento location where it would be examined. After getting a confirmation that the truck would be examined if presented to the expert, a Peter Grassi, I have since been trying to re-contact Mr. Galvez to set up some time when this could be done. So far, Mr. Galvez, who apparently is going through an acrimonious divorce, has not yet returned those calls.

      The court first considers the issue of good cause for petitioner's failure to exhaust this claim prior to filing the instant action. The pending application to stay does not discuss Rhines v. Weber and the standards for staying habeas petitions, as set forth above. In his declaration, petitioner's counsel states that on January 26, 2007, he visited petitioner in prison and discussed his case. During this conversation, petitioner professed to counsel his belief that the vehicle should have been tested prior to the motion to suppress and that it was still possible that such testing could yet prove that there was nothing wrong with the vehicle's stoplamp.

      Based on the information contained in counsel's declaration, it is clear that petitioner has been aware of the grounds of his new claim since his conviction. The record contains no explanation regarding why he did not previously exhaust this claim in state court. The court also observes that petitioner did not raise this claim in his original pro se petition filed in this court. Under these circumstances, the court does not find that petitioner has shown good cause for his failure to exhaust this claim prior to filing the instant action.

      In the opposition to the pending request, respondent argues that petitioner has also failed to show that his new claim has potential merit. Respondent argues that an examination of petitioner's truck, four years after his arrest and after it has been in the possession of another individual, cannot conclusively establish whether the tail lamp was flickering or not at the time of petitioner's arrest. However, because petitioner has clearly failed to demonstrate good cause for his failure to previously exhaust this claim, the court need not reach the issue of whether the claim is potentially meritorious.

      Accordingly, IT IS HEREBY RECOMMENDED that petitioner's February 28, 2007, application to stay proceedings be denied, and respondent be directed to file a response to

1  the amended petition.

2    These findings and recommendations are submitted to the United States District
3  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
4  days after being served with these findings and recommendations, any party may file written
5  objections with the court and serve a copy on all parties.  Such a document should be captioned
6  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
7  shall be served and filed within ten days after service of the objections.  The parties are advised
8  that failure to file objections within the specified time may waive the right to appeal the District
9  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

10 DATED: 8/1/07

              /s/ Gregory G. Hollows

              _____
              GREGORY G. HOLLOWS
              UNITED STATES MAGISTRATE JUDGE

hern1106.sta