IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONY JACKIE HERNANDEZ,

             Petitioner,

      vs.

PEOPLE OF THE STATE OF
CALIFORNIA and JAMES YATES,
Warden,

             Respondents.

No. 2:06-cv-01106-JKS

MEMORANDUM DECISION

       Petitioner Tony Jackie Hernandez, a state prisoner appearing through counsel, filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254.  Hernandez is presently in the custody of the California Department of Corrections and Rehabilitation, incarcerated in the Pleasant Valley State Prison.

## I.  BACKGROUND/PRIOR PROCEEDINGS

       Following the denial of his motion to suppress evidence, a Sacramento County Superior Court jury convicted Hernandez of possession of heroin (Cal. Health & Saf. Code § 11350(a)) and possession of ammunition by a convicted felon  (Cal. Pen. Code § 12316(b)(1)).  In a bifurcated proceeding, the trial court thereafter found that defendant had suffered three prior convictions (which were also strikes) resulting in prison terms.  (Cal. Pen. Code §§ 667(b)-(i), 667.5(b), 1170.12.)  After denying his motion to strike the priors, the court sentenced Hernandez to two concurrent terms of 25 years to life in state prison.

       Hernandez timely appealed to the California Court of Appeal, which affirmed his conviction in a unpublished written decision on November 29, 2005.[1]  The California Supreme

---

[1] Accessible at 2005 WL 3196518.

Court summarily denied review without opinion or citation to authority on March 22, 2006.[2] Hernandez timely filed his petition for habeas relief in this Court on May 15, 2006 (file stamped May 22, 2006).

## II.  GROUNDS RAISED/DEFENSES

In his original *pro se* petition Hernandez raised six grounds:  (1) Failure to suppress the evidence based upon an illegal traffic stop was erroneous; (2) ineffective assistance of counsel for failure to present the appropriate vehicle code section when arguing the motion to suppress; (3) trial court erred in failing to impose sanctions for failure to preserve evidence; (4) ineffective assistance of counsel for failure to raise the issue of failure to preserve evidence; (5) trial court abused its discretion in failing to strike the priors; and (6) ineffective assistance of counsel for failure to move to reduce his conviction as to the possession of bullets to a misdemeanor.

This Court appointed counsel and an Amended Petition was filed.  In his Amended Petition, Hernandez abandoned all the grounds raised in his original petition except the second ground, ineffective assistance of counsel for failure to present the appropriate vehicle code section to the trial court at the suppression hearing, and, to the extent applicable by way of the second ground, the first, error in failing to suppress the evidence based on an illegal traffic stop. Respondent concedes that Hernandez has exhausted his available state court remedies as to the remaining grounds.

## III.  STANDARD OF REVIEW

Because Hernandez filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence

---

[2] Hernandez, appearing *pro se*, also filed a petition for habeas relief in the California Supreme Court on May 22, 2006, which was summarily denied December 20, 2006.  The issues raised in that habeas proceeding are not relevant or germane to the habeas petition pending before this Court.

presented in the State court proceeding."[3]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[4]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[5]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be "objectively unreasonable, "not just incorrect."[6]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[7]  Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[8]

In applying this standard, this Court reviews the last reasoned decision by the state court,[9] which in this case was that of the California Court of Appeal.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[10]

To the extent that Petitioner raises issues of the proper application of State law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of

---

[3]  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[4]  *Williams v. Taylor*, 529 U.S. at 412.

[5]  *Carey v. Musladin*, 549 U.S. 70, ___, 127 S.Ct. 649, 654 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. ___, ___, 128 S.Ct. 743, 746-47 (2008) (per curiam).

[6]  *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[7]  *Schriro v. Landrigan*, 550 U.S. ___, ___, 127 S.Ct. 1933, 1939 (2007).

[8]  *Fry v. Pliler*, 551 U.S. ___, ___, 127 S.Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[9]  *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

[10]  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

dual federalism that the States possess primary authority for defining and enforcing the criminal law.[11]  A federal court must accept that state courts correctly applied state laws.[12]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[13]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[14]

A determination of state law by a state appellate court is also binding in a federal habeas action.[15]  This is especially true where the highest court in the state has denied review of the lower court's decision.[16]

## IV.  DISCUSSION

Prior to trial, Hernandez moved to exclude certain evidence challenging the legality of the traffic stop.  The facts surrounding the traffic stop are set forth in the Court of Appeal's opinion.[17]

The trial court heard the following evidence and argument on the motion to suppress:

---

[11] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[12] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[13] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see also West v. AT & T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law....").

[14] *See Bradshaw,* 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[15] *See Hicks v. Feiock,* 485 U.S. 624, 629-30, 630 n. (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[16] *Id.; see also West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.").

[17] Findings that this Court must accept unless shown to be incorrect by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell, supra.*  A burden Hernandez has failed to carry.

Sacramento Police Detectives Jeff Wright and Joe Helfrick testified that while patrolling on Stockton Boulevard in an unmarked vehicle about 11:00 a.m. on October 8, 2002, they saw defendant's Ford pickup truck ahead of them come to an abrupt stop in the number two lane for no apparent reason. Helfrick observed that defendant's "left rear tail lamp began flickering intermittently as if a bulb was loose or something." As defendant braked again and turned right onto 37th Avenue, the left stoplamp flickered again. Wright characterized it as looking the way a bulb "might flicker real quick before it's going out sometimes. Maybe as if it had a short." It struck him as "clearly defective." The right stoplamp light was steady. The officers decided to pull over defendant to advise him of the apparently defective light, and to inquire whether he had arrest warrants or was on parole. (Defendant admitted that Detective Wright advised him of a defective taillamp.)

Answering Detective Wright's questions, defendant said he did not have a driver's license and he was on parole. The officers asked for and received permission to search defendant. They found four .40-caliber rounds of ammunition in defendant's pants pocket and arrested him; they then found a substance later determined to be heroin in a leather jacket in the truck's passenger compartment.

Defendant testified he had checked the rear lamps a day or two before and had found no defects. Defendant's employer, Steven Ellerman, picked up the truck from the location of the traffic stop after defendant's arrest and drove it back to Ellerman's place of business, followed for several miles by a coworker. The coworker testified that he did not see any flickering in the rear lights.

Defense counsel argued that the officers' claim of a flickering taillight was not credible and the light was in good working order. In any event, according to counsel, a flickering taillight would not violate Vehicle Code section 24603, which merely requires vehicles to possess rear stoplamps that emit a red light "plainly visible and understandable from a distance of 300 feet to the rear both during normal sunlight and at nighttime . . . ." (Veh.Code, § 24603, subd. (e).) Counsel noted that the Vehicle Code does not define the terms "defect," "working order," and "good working order." Thus, according to counsel, the officers did not have a reasonable suspicion that defendant was violating any provision of the Vehicle Code.

The trial court disagreed, ruling that the flickering taillight was an apparent defect that authorized the officers to stop defendant's vehicle.

Hernandez argues that trial counsel was ineffective for failing to raise before the trial court the application of California Vehicle Code § 25251.5(c), which provides: "Any stoplamp or supplemental stoplamp required or permitted by Section 24603 may be equipped so as to flash not more than four times within the first four seconds after actuation by application of the

brakes."  Trial counsel is criticized in two particulars:  (1) a failure to cite § 25251.5(c) to the trial court; and (2) failure to question the arresting officers concerning their observations as to the number of times the stoplamp flickered during the specified four-second interval.

Under the Supreme Court standard in *Strickland*,[18] to demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[19]  Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[20] *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions.  Indeed, the Supreme Court admonished in *Strickland*,[21]

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

In rejecting Hernandez's claim on direct appeal, the California Court of Appeal held:

---

[18] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[19] *Id.*

[20] *Id.; Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[21] 466 U.S. at 689 (internal citations and quotation marks omitted).

Defendant contends the trial court erred by denying his motion to suppress because a Vehicle Code provision that trial counsel failed to cite showed defendant's "flickering" taillight was lawful.  Alternatively, defendant contends trial counsel provided ineffective assistance by failing to discover and cite this provision.  We reject both contentions.

In reviewing a trial court's ruling denying a motion to suppress, all presumptions are in favor of the trial court's factual findings, whether express or implied, if supported by substantial evidence.  However, we decide independently whether the officer's conduct in performing the traffic stop and conducting the search was constitutionally reasonable.  (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

To justify an investigative stop or detention, an officer must have specific and articulable facts causing him to entertain a reasonably objective suspicion that some activity relating to crime has occurred or is about to occur and the person to be detained is involved in that activity.  (*People v. Aldridge* (1984) 35 Cal.3d 473, 478.)  The reasonable suspicion standard applies to vehicle stops.  (*People v. White* (2003) 107 Cal.App.4th 636, 641;*U.S. v. Lopez-Soto* (9th Cir.2000) 205 F.3d 1101, 1104.)  Thus, a reasonable suspicion that a driver is violating the Vehicle Code justifies an investigative traffic stop.  (Veh.Code, § 2806; *In re Justin K.* (2002) 98 Cal.App.4th 695, 700 (*Justin K.*).)

It is immaterial that the officers relied on the wrong Vehicle Code section, so long as their suspicions of a Vehicle Code violation were objectively reasonable.  (*Justin K., supra,* 98 Cal.App.4th at p. 700.)  However, if an officer makes a stop based on objective facts that could not constitute a violation, the officer's suspicions cannot be considered reasonable.  (*Ibid.*)

Defendant asserts that in light of Vehicle Code section 25251.5, subdivision (c) (hereafter Veh.Code, § 25251.5(c)), the officers' account proves they observed nothing illegal.  Section 25251.5(c) provides:  "Any stoplamp or supplemental stoplamp required or permitted by Section 24603 may be equipped so as to flash not more than four times within the first four seconds after actuation by application of the brakes."  According to defendant, the flickering of his taillight as observed by the officers constituted "flash [ing]" within the meaning of section 25251.5(c), because they did not testify that they saw his taillight "flickering" or "flashing" more than four times in four seconds.  Furthermore, the officers must have been unaware of this provision, as they did not mention it in their testimony.  Thus, in defendant's view, the officers stopped him under a mistake of law after having observed only legal activity.  Because they lacked objectively reasonable suspicion of a Vehicle Code violation, the traffic stop was unlawful.

We may not consider defendant's argument directly because he did not raise it in the trial court. On a motion to suppress evidence, the defendant must state the grounds for suppression with appropriate specificity.  (Pen.Code, § 1538.5, subd.

(a)(2); *People v. Williams* (1999) 20 Cal.4th 119, 130-131(*Williams*).)  He may not raise a new ground for suppression on appeal.  (*Williams,* at p. 131.)  And because defendant had the burden to show why the evidence was illegally obtained, we may not find the trial court erred by failing to consider an argument that was not made.

Anticipating our conclusion, defendant argues in the alternative that by failing to cite Vehicle Code section 25251.5(c), trial counsel provided ineffective assistance.

" '[I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his "representation fell below an objective standard of reasonableness . . . under prevailing professional norms."  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed .2d 674, 693-694, 104 S.Ct. 2052]; *Ledesma, supra,* 43 Cal.3d at pp. 215-216.)  Second, he must also show prejudice flowing from counsel's performance or lack thereof.  (*Strickland, supra,* at pp. 691-692 [80 L.Ed.2d at pp. 695-696]; *Ledesma, supra,* at pp. 217-218.)  Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*In re Sixto* (1989) 48 Cal.3d 1247, 1257 [259 Cal .Rptr. 491, 774 P.2d 164]; *Strickland, supra,* at p. 694 [80 L.Ed.2d at pp. 697-698].)' (*People v. Jennings* (1991) 53 Cal.3d 334, 357 [279 Cal.Rptr. 780, 807 P.2d 1009].)"  (*In re Avena* (1996) 12 Cal.4th 694, 721 (*Avena*), followed in *People v. Weaver* (2001) 26 Cal.4th 876, 925 (*Weaver* ).)  If the record discloses that counsel was asked to explain the tactical purpose of his conduct and failed, or that there simply could be no reasonable tactical purpose for counsel's conduct, a claim of ineffective assistance is cognizable on direct appeal.  (See *People v. Jones* (2003) 29 Cal.4th 1229, 1254; *Avena, supra,* 12 Cal.4th at p. 722 .)

We are not persuaded that counsel's performance was deficient.  Moreover, even assuming for argument's sake that a competent attorney would have raised Vehicle Code section 25251.5(c) as controlling authority, it is not reasonably probable that defendant would have obtained a more favorable outcome.  (See *People v. Williams* (1988) 44 Cal.3d 883, 937.)

Defense counsel was only obliged to cite Vehicle Code section 25251.5(c) if the statute applied.  Section 25251.5 concerns the design and operation of vehicle stoplamps.  Stoplamps must ordinarily emit a steady glow.[FN3]  However, section 25251.5 provides an exception for stoplamps that are "equipped" to flash if the flash duration falls within prescribed parameters; such lamps may flash "not more than four times within the first four seconds after actuation by application of the brakes."  (§ 25251.5(c).)  As described in the record, the stoplamp here at issue does not fall within the terms of the section.  While section 25251.5(c) refers to a

light that flashes within a prescribed interval, the officers described a light that flickered, i.e., "burn[ed] unsteadily or fitfully." (American Heritage Dict. (2d college ed.1985) p. 513.) Moreover, it flickered not because it was "equipped" to do so, but because it was defective, unlike the right stoplamp, which operated properly. The officers testified that while the right stoplamp was steady, it appeared that the left stoplamp was about to go out. "It was clearly defective." It flickered "on and off real quickly. Like a light bulb, an indoor bulb might flicker real quick before it's going out . . . as if it had a short."

---

[FN3.] Under federal motor vehicle safety standards, made applicable to the Vehicle Code by section 26103, subdivision (b), vehicle lamps, except for signal lamps and other specified exceptions, must be "wired to be steady-burning." (49 C.F.R. § 571.108.)

---

Vehicle Code section 24252, subdivision (a) provides that "[a]ll lighting equipment of a required type installed on a vehicle shall at all times be maintained in good working order." Vehicle Code section 25251.5(c) cannot plausibly be read to legalize defective, flickering stoplamps that are about ready to go out, and the trailing officers were not compelled to time the flickering before making a stop to further investigate. The flickering and apparently defective condition of the stoplamp constituted reasonable suspicion. Counsel was not ineffective for failing to raise as a defense an inapplicable statute that would not have affected the outcome of the motion to suppress.

As Hernandez acknowledges, where, as here, the state affords a defendant the opportunity for a full and fair consideration of Fourth Amendment search and seizure claims, this Court is precluded from reviewing those claims in a federal habeas proceeding.[22] As Hernandez correctly argues, however, the Supreme Court has carved out an exception to this rule: where, as here, an ineffective assistance of counsel claim is based on the incompetence of counsel in litigating a Fourth Amendment issue.[23] In that case, the Court must not only weigh the merits of the Fourth Amendment claim, it must apply the *Strickland* standard as well, which creates a more significant hurdle. As the Supreme Court noted:[24]

As is obvious, *Strickland's* standard, although by no means insurmountable, is highly demanding. More importantly, it differs significantly from the elements of proof applicable to a straightforward Fourth Amendment

---

[22] *Stone v. Powell*, 428 U.S. 465. 489–93 (1976).

[23] *Kimmelman v. Morrison*, 477 U.S. 365, 380–81 (1986).

[24] *Id.*, 477 U.S. at 382.

claim.  Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief.  Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

The major portion of Hernandez's argument is directed to the sufficiency of the evidence to justify the stop, *i.e.*, (1) there was no testimony that the arresting officers had witnessed the stoplamp for four seconds or the number of times it "flickered" (limited observation); (2) there was no evidence that the officers were aware of the applicable Vehicle Code section that permitted flashing; (3) there was no evidence that the stoplamp did not comply with Vehicle Code § 25251.5(c); and (4) the trial court and the majority of the Court of Appeals erroneously accepted the testimony of the arresting officers as to the "flickering."  These arguments fall wide of the mark and misconstrue the issue before this Court.

First, Hernandez misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  The role of this Court is to simply determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain the result.[25]  That such evidence exists with respect to the denial of the suppression motion is clearly established by the record in this case.  Hernandez bears the burden of establishing by clear and convincing evidence that the factual findings were erroneous;[26] a burden Hernandez has failed to carry.

Second, the issue before this Court is not whether the trial court correctly ruled on the motion to suppress based upon the evidence presented.  The issue before this Court is whether counsel was ineffective in failing to bring Vehicle Code § 25251.1(c) to the attention of the court and question the arresting officers concerning the elements of that section, *and*, if so, did that failure prejudice Hernandez; *i.e.*, had it been properly presented Hernandez would have received a favorable decision.  Hernandez fails on both prongs of the *Strickland* standard.

---

[25] *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)

[26] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell, supra*.

The Court agrees that counsel must conduct sufficient investigation and engage in sufficient preparation to be able to present and explain the significance of all available evidence that may plausibly exculpate a defendant.[27]  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[28]  In this case, the only evidence was the testimony that no one, other than the arresting officers, noted any "flickering" by the stoplamps.  There is no evidence in the record that the stoplamps of the vehicle Hernandez was operating "flashed" as permitted by § 25251.1(c).  Trial counsel made an obvious strategic decision to present the strongest, indeed, under the evidence, the only plausible, defense—the stoplamps did not "flicker" as described by the arresting officers.  Contrary to Hernandez's arguments, in the context of this proceeding, the issue is not whether there was no evidence that the stoplamps did not comply with § 25251.5(c), the critical point is there was no evidence that they did.  In the absence of some evidence that the stoplamps fell within the scope of § 25251.5(c) counsel was not deficient in failing to cite that section to the trial court.  Nor, for that matter, is there is any reasonable probability that citing § 25251.5(c) could have changed the outcome at the suppression hearing.

This Court, as did the majority of the California Court of Appeal, must conclude that, even if counsel erred, that error did not rise to the level of incompetence or have the prejudicial effect of sufficient magnitude to satisfy the *Strickland* standard.  Even if this Court were to agree with the dissenting opinion, that would not suffice.  As noted above, the test is not whether this Court in a federal habeas proceeding believes the decision is incorrect, it must be must be "objectively unreasonable,"[29] a substantially higher threshold.[30]  The Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable

---

[27] *See, e.g., Williams v. Taylor*, 529 U.S. at 393, 399; *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

[28] *Strickland*, 466 U.S. at 690–91.

[29] *Wiggins v. Smith, supra.*

[30] *Schriro v. Landrigan, supra.*

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[31]  This Court cannot find that the decision of the California Court of Appeal was more than incorrect or erroneous, but that its application of clearly established law was objectively unreasonable.[32]   Hernandez is not entitled to relief.

## V.  CONCLUSION AND ORDER

Accordingly, because Hernandez is not entitled to relief under the ground asserted,

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability.[33]  All federal constitutional issues were addressed by the California Court of Appeal and deemed addressed by the California Supreme Court on petition for review, and no reasonable jurist could find that those decisions were "objectively unreasonable."

The Clerk of the Court shall enter final judgment accordingly.

Dated:  September 26, 2008.

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[31] 28 U.S.C. § 2254(d).

[32] *Lockyer–Williams–Schriro*.

[33] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks and citations omitted)).

MEMORANDUM DECISION
*Hernandez v Yates*, 2:06-cv-01106-JKS                    12